THE STATE, EX REL. MIKUS, PROS. ATTY., v. HIRBE.*
THE STATE, EX REL. MIKUS, PROS. ATTY., v. MALINOVSKY.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. METELSKY.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. SZABO.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. SOLOMON.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. PALERMO.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. HOLOMUZKI.
THE STATE, EX REL. MIKUS, PROS. ATTY., v. BULZOMI.

[Cite as State, ex rel. Mikus, v. Hirbe, 7 Ohio App. 2d 325.]

*For earlier report in this matter, see 5 Ohio App. 2d 307.

(Nos. 1688, 1689, 1690, 1691, 1692, 1693, 1694 and 1695—
Decided March 8, 1966.)

*Mr. Paul J. Mikus*, prosecuting attorney, and *Mr. Nicholas R. Curci*, for relator.

*Messrs. Lucas, Prendergast, Albright & Warren*, for respondents in case Nos. 1688, 1689, 1690, 1692 and 1694.

*Messrs. Provenza, Friedman, Cirigliano & Zieba*, for respondent in case No. 1688.

*Mr. Joseph A. Ujhelyi*, for respondents in case Nos. 1691 and 1693.

*Mr. Ray L. Miraldi*, for respondent in case No. 1695.

Doyle, P. J. Eight actions in quo warranto were brought by the state of Ohio on the relation of Paul J. Mikus, Prosecuting Attorney of Lorain County, Ohio. Each one was directed toward single members of the Police Department of the city of Lorain, who are claimed to have ''usurped'' and to now be ''unlawfully'' holding offices within the department.

The relator charges that vacancies in the police department had occurred within a period of three years immediately prior to the time of commencing these actions, and that the vacancies were filled by the various respondents; that in the examinations of these men for promotion, and of others participating in the examination, the Civil Service Commission of the city of Lorain ''failed to include in the total grade * * * any credit or allowance for efficiency ratings,'' nor had any records been kept by the commission reflecting the efficiency of the men participating in the examinations, all of which is ''contrary to the rules of the Civil Service Commission and the laws of the state of Ohio.''

The relator prays, in each of these cases, that the respondent be required to show by what warrant he claims to enjoy the office of his appointment; and if it should be held that the respondent is not entitled thereto, then this court should enter a judgment of ouster from the office to which he had been promoted, and that he be returned to his former position in the department: and that a new promotional examination be given.

Issues were created by the answers of the respondents, each claiming a clear legal right to the offices now held.

Upon stipulations of fact the cases came on for hearing.

In short, the stipulations show that: each respondent took written examinations for promotion as provided by statute, in competition with other members of the police force who were competent to take them, and who desired to participate; each respondent satisfactorily passed the examination and either received the highest grade or received a grade sufficiently high for placement on the eligibility list; in determining the ultimate grade the statutory allowance for length of service was given effect; efficiency ratings were not considered by the Civil Service Commission in determining the grades, for the reason that efficiency ratings had not been and had never been kept for members of the police force in view of the fact that an administrative interpretation of the statutes of Ohio, and the rules of the Civil Service Commission relating to promotional examinations, had made such ratings unnecessary; and none of the respondents knew what factors were to be taken into consideration in arriving at a grade, nor did any of them participate in any way in the decision on their grades, excepting only their participation in the written examination.

It appears, as properly set forth in one of the respondent's brief, that the procedures of promotion in the police department are substantially as follows:

"1. A vacancy [in a grade above that of patrolman] must occur;

"2. A promotional examination must be held by the civil service commission;

"3. A certification by the civil service commission of the successful examinees in the order of their grades;

"(a) An eligible list is authorized by law and was created for a period of two years to take care of * * * vacancies [as they occur].

"4. Appointment by the safety director.

"5. A three-month probationary period;

"6. The final appointment."

We now state the salient facts in each case:

Case No. 1688. Robert L. Hirbe. On December 28, 1964, a vacancy through death was created in the office of Chief of

Police; on February 25, 1965, Hirbe took the written examination, and he was graded March 9, 1965, where he received the highest grade calculated on the written test plus seniority credit. He was appointed Chief of Police March 11, 1965. This quo warranto action against him was commenced on October 8, 1965.

Case No. 1689. John Malinovsky. This respondent took a promotional examination for lieutenant of police on May 20, 1965. He was given a passing grade on May 25, 1965, and he was appointed lieutenant on June 8, 1965. The relator charges that the respondent took an examination for sergeant on December 20, 1962, and was appointed sergeant on January 20, 1963; that, for the reason that he received no efficiency rating in 1963, he was wrongfully appointed sergeant and consequently was not eligible to take a promotional examination for lieutenant. Furthermore, it is charged that the failure of an efficiency rating in the examination for lieutenant disqualifies him for appointment to lieutenant.

In this case, the relator prays for an order returning this officer to the position of patrolman despite his appointment on January 20, 1963, to the rank of sergeant; and his appointment on June 8, 1965, to the rank of lieutenant after receiving the highest grade among his competitors. This action against him was commenced October 8, 1965.

Case No. 1690. George Metelsky. This respondent took the written examination for sergeant on May 27, 1965, and received the highest grade. He was appointed sergeant on June 16, 1965. The same factors in grading were given here as in the previous cases. This action was commenced by relator on October 8, 1965.

Case No. 1691. John W. Szabo. This respondent took the promotional written examination for lieutenant of police on April 11, 1962. His grade was sufficient to place him on the eligible list which lasted for a period of two years. He was appointed lieutenant of police on November 17, 1962. The same criteria for grading were used in this case as in the others. This action in quo warranto was commenced on October 8, 1965, almost three years after his appointment, and more than three years after he was certified as eligible for promotion.

Case No. 1692. William J. Solomon. This respondent took the promotional written examination for sergeant of police

held on December 20, 1962. He was certified to the Civil Service Commission as one having received a sufficient grade, and was appointed sergeant on January 20, 1963. He was graded under the same factors as the others. This action against him was commenced October 8, 1965.

Case No. 1693. Joseph Palermo. This former patrolman took a promotional written examination for sergeant on December 20, 1962. He was placed on the eligible list as one having satisfactorily passed the examination, and he was appointed sergeant on March 16, 1963. This action was commenced October 8, 1965.

Case No. 1694. James H. Holomuzki. This respondent took the written promotional examination for sergeant on December 20, 1962. He scored one of the highest grades and was certified by the Civil Service Commission to the Safety Director, and he was appointed sergeant of police on November 1, 1964. This action against him was commenced October 8, 1965.

Case No. 1695. Victor R. Bulzomi. Prior to May 27, 1965, a vacancy existed among the sergeants in the police department. Thirty-seven candidates took a promotional examination on May 27, 1965. This respondent rated second in the examination which, as stated before, consisted of a written examination, plus an allowance for length of service. He was placed on the eligibility list and was appointed October 1, 1965, to fill a vacancy, as he was at the time of the vacancy the top man on the list. This action against him was commenced October 8, 1965.

A decision in the eight actions now originally before this court of necessity hinges on our interpretation of three Supreme Court cases, to wit: *State, ex rel. Byrd,* v. *Sherwood, Dir.,* 140 Ohio St. 173; *Kluth* v. *Andrus, Dir.,* 157 Ohio St. 279; and *State, ex rel. Ethell,* v. *Hendricks,* 165 Ohio St. 217.

It is here noted that the Supreme Court was unanimous in none of them, and in two of them at least two members of the Supreme Court, as it is now constituted, were in opposition to each other and to other members of the court. As a subordinate appellate court, we must agree that each of the cases was properly decided as none of them has been overruled and, as a consequence, we must attempt to find distinguishing features in them and to apply the law, as we find it to be, to the facts in the cases now before us.

Applicable to the cases here for decision is the fact that the statutes of the state relative to civil service, Sections 143.01 to 143.48, inclusive, Revised Code, provide that before promotions are made in the police departments of the various cities in the state, the applicants must pass a competitive promotional examination, and that the total grade shall include (a) the grade on an examination composed of questions and answers which shall be entirely in writing; (b) the grade based on credit for seniority in service according to the formula set out in Section 143.16, Revised Code; and (c) the grade based on credit for efficiency or conduct and capacity in office. *State, ex rel. Ethell,* v. *Hendricks,* 165 Ohio St. 217.

In each of the eight cases, full compliance was had with directions (a) and (b) above, but not with (c) for the obvious reason that efficiency or conduct ratings had never been kept and consequently could not be used. It may well be that the Civil Service Commission believed that ratings for efficiency were unnecessary so long as it complied with the other tests. In this respect, it is interesting to read pertinent parts of Rule VII, Section 2 of the Civil Service Commission:

"Section 2. Content of examinations. The examination held to establish a list of eligibles for any class shall consist of *one or more* of the following parts:

"* * *

"(h) Efficiency. This subject shall be used in promotional examinations only and shall consist of the average of the two previous efficiency ratings of the employee concerned or of his last rating in the case he has not been in the service long enough to receive two." (Emphasis ours.)

If the claims and prayers in the petitions of the relator were all decided in the petitioner's favor, it is apparent that such a finding is tantamount to finding that no one on the entire police force of the city of Lorain is eligible for promotional examinations, even extending to the office of chief of police. A condition of such chaos is hard to believe was in the mind of any legislator when he voted the civil service laws.

It is to be further observed that every action was brought in the name of the state of Ohio on the relation of the prosecutor, and not in the name of any one aspiring to an office in the de-

partment. Here, the state of Ohio itself is in contest with an agency of one of its political subdivisions.

We find in the rules of the Civil Service Commission the following command which, under the statutes, has the full force of law:

Rule II, Section 6. "The term 'probationary period' shall mean the three months term for which a person is given either an original appointment or a promotional appointment."

We also find that Rule XIII, Section 1, commands the following:

"All original and promotional appointments shall be for a probationary period of three months; and no appointment or *promotion shall be deemed finally made until appointee has satisfactorily served his probationary period."* (Emphasis ours.)

In the record before us we find that all but one respondent has *satisfactorily served his probationary period of three months* after his appointment.

In the case of *Kluth* v. *Andrus, Dir.*, 157 Ohio St. 279, a probationary period of three months had been satisfactorily served by the officer there under attack before the litigation commenced. In the case of *State, ex rel. Ethell,* v. *Hendricks,* 165 Ohio St. 217, the officer under attack had served only six days of the probationary period before the action against him was commenced. This fact may be the reason why the author of the opinion in *State, ex rel. Ethell,* v. *Hendricks,* did not mention the case of *Kluth* v. *Andrus* previously decided by his court.

We recognize the case of *Kluth* v. *Andrus, supra,* as establishing the law relative to the factual questions therein involved, and are of the opinion that directly, and by reasonable and logical similitudes, the law therein applied should be applied to all but one of the cases here. Paraphrasing the first paragraph of the syllabus in *Kluth* v. *Andrus, Dir.*, 157 Ohio St. 279, to fit the facts before us, we pronounce the following rule:

Where the promotional civil service examination given for a position did not fully comply with the civil service laws, and where the members of the civil service commission had failed to require the keeping of efficiency records of the members of the police force, thereby making it impossible to consider an efficiency rating in an ultimate grade to be given the candidate,

but had otherwise complied with all of the statutory requirements, and it does not appear that the candidate so certified either sponsored, participated in, or had anything to do with the failure of the commission to require an efficiency rating, and where such candidate was thereafter, pursuant to legal requirements as to grade, appointed to the position to which he aspired, and rendered satisfactory service in that position for more than three months, his removal from that position is governed by the provisions of Section 143.27, Revised Code.

It appears also that *State, ex rel. Byrd,* v. *Sherwood, Dir.,* 140 Ohio St. 173, sustains by analogy the position which is now being taken by this court, and that case of *State, ex rel. Ethell,* v. *Hendricks,* 165 Ohio St. 217, should be distinguished on the facts.

We, therefore, find that judgments should be entered for the respondents and against relator in all of the cases, excepting only the case directed against Victor R. Bulzomi, and designated case No. 1695. The respondent, Bulzomi, had not served the probation period, and his appointment cannot be ''deemed finally made'' (Section 143.20, Revised Code), as of the time of the institution of the suit.

*Judgments accordingly.*

BRENNEMAN and HUNSICKER, JJ., concur.